## MURRAY & BLUNT *vs.* HAY.

An order to produce witnesses may be either in the form originally used, requiring the *adverse* party to produce witnesses within forty days, or in the more modern form requiring *the parties* to do so.

There is no inflexible rule as to joinder of parties in the court of chancery. Yet, as a general principle, several complainants, having distinct and independent claims to relief against a defendant, cannot join in a suit for the separate relief of each.

Nor can a single complainant, having distinct and independent claims to relief against two or more defendants severally, join them in the same bill.

But there are many exceptions to this rule; and the court exercises a sound discretion, in determining whether there is a misjoinder of parties, under the particular circumstances of each case.

Two or more judgment creditors, having separate judgments, may join in a bill to reach the equitable interests and choses in action of their common debtor, after they have exhausted their remedies at law, by execution, upon their respective judgments.

Two or more persons having separate and distinct tenements, which are injured, or rendered uninhabitable, by a common nuisance, or which are rendered less valuable by a private nuisance which is a common injury to the tenements of both, may join in a suit to restrain such nuisance.

The insertion of a prayer for multifarious relief, *it seems*, will render a bill multifarious, if the court, at the hearing, would, upon the case made by the bill, be required to grant such relief, in addition to granting the relief which is not multifarious.

But where multifarious relief is not prayed for in the bill, it is not a matter of course to give it, at the hearing, under the general prayer; in addition to the relief in which the complainants have a common interest.

THIS was an application, on the part of the complainants, to open an order entered by the defendant to close the proofs, and to allow farther time for the complainants to take testimony in this cause. And a second application was made, for leave to amend the complainants' bill, by striking out the name of Murray as one of the complainants therein.

The defendant's solicitor, on the 10th of June, 1835, entered an order that the complainants produce witnesses in this cause within forty days after notice of the order, and served a notice of such order upon the solicitor for the complainants the same day. On the 18th of July, the solicitor for the complainants mailed an affidavit, directed to the chancellor, and obtained his fiat for an order, founded thereon, extending the time to produce

Murray v. Hay.

proofs until the 1st of October. The fiat was received on Monday the 21st of July, the second day after the great fire in New-York; and the order was entered the same day, but was not served until the afternoon of the 22d, owing to the derangement of business produced by the fire. Previous to the receipt of notice of the order, the defendant's solicitor had entered an order to close the proofs; which, under the instructions of his client, he refused to open. The application for leave to amend was made upon the supposition that an objection for a misjoinder of complainants could be sustained; the bill having been filed by two persons, who were owners of different dwelling houses in severalty, having no joint interest in either of them, to restrain an alleged nuisance which was a common but not a joint injury to both of the complainants.

*E. Sandford,* for the complainants.

*A. Williams,* for the defendant.

THE CHANCELLOR. The objection that the order to produce witnesses was not entered in the proper form is not well taken. By the practice of the English court of chancery, and as it formerly existed here, either party who wished to close the proofs was obliged to enter a rule that the adverse party produce his witnesses; and at the expiration of the time allowed by that order, he entered the order nisi to pass publication. By this last order both parties were precluded from examining farther witnesses, after the expiration of the eight days, unless an order to enlarge publication had been obtained in the meantime. (2 *Dan. Ch. Pr.* 562. 1 *Smith's Ch. Pr.* 252.) The rules of this court, however, have altered the practice so far as to allow either party to enter a forty day order to produce witnesses, upon which the party entering such order, or the adverse party, may proceed and obtain an absolute order to close the proofs after the expiration of the time allowed by the first order, unless the time shall be enlarged by a special order of the court. (*Rule* 68.) But the mere authority to one party to enter an order to close the proofs,

upon an affidavit of the receipt of a notice from the adverse party of an order to produce witnesses, did not necessarily require a variance in the form of the first order. The order to produce witnesses may therefore be in the form originally used, requiring the adverse party to produce witnesses within forty days. Or it may be in the form contained in the precedents of Barbour and of Hoffman, requiring *the parties* to produce witnesses, &c.; which is according to its legal effect, under the new rule of this court upon the subject. The order to close the proofs was therefore strictly regular; although the form of the preliminary order entered by the defendant did not in terms require the defendant himself, as well as the complainant, to produce witnesses within forty days. For, upon filing an affidavit of the receipt of notice of such an order as was entered in this case, the complainant could himself have entered an order to close the proofs, at the expiration of the specified time.

But as the complainants had actually obtained the fiat of the court, and had entered an order thereon, enlarging the time to produce witnesses, within the time allowed for that purpose by the practice of the court, the service of which order was delayed by mere accident, the order to close the proofs should be opened upon payment of costs. The excitement and confusion necessarily produced among business men in New-York by the great fire on the previous Saturday, is sufficient of itself to excuse, or account for, the delay in serving the order immediately after it was entered. The order to close the proofs must therefore be vacated, and the time to produce witnesses is extended to the first of November next, inclusive. And the complainants are to pay to the defendant's solicitor $15 for his costs of entering the order to close the proofs, and noticing the cause for hearing, and opposing this application to open such order.

The application to amend, by leaving out the name of one of the complainants, should also be granted, upon such terms as will effectually protect the defendant as to costs, &c.; if there is in fact a misjoinder of the complainants, which may be fatal to their suit at the hearing. Upon an examination of the question, however, I am satisfied there is no misjoinder of complain-

ants, so far as the bill seeks to restrain the continuance of a nuisance which was a common though not a joint injury to both of the parties who have filed this bill. There is no inflexible rule on the subject of joinder of parties in this court. But, as a general principle, several complainants, having distinct and independent claims to relief against a defendant, cannot join in a suit for the separate relief of each ; nor can a single complainant, having distinct and independent claims to relief against two or more defendants severally, join both or all of them in the same bill. There are, however, many exceptions to this general principle ; and the court exercises a sound discretion in determining whether there is a misjoinder of parties, under the particular circumstances of the case. Thus in the case of *Kensington* v. *White*, (3 *Price's Rep.* 164,) the court of exchequer in England overruled a demurrer for multifariousness, which was put in to a bill, filed by seventy-two different underwriters upon policies for the defendants, upon which policies the complainants had been sued at law for their respective subscriptions ; the object of the bill being to enable each complainant to establish a defence, which was common to all. And this decision was followed by Lord Abinger in the more recent case of *Mills and others* v. *Campbell*, (2 *Young & Coll. Exc. Rep.* 389,) where the suits against some of the complainants were upon ordinary policies by simple contract, and against others upon a policy under seal. This court also sustained a bill filed by different judgment creditors, having a common but not a joint interest in the relief sought by their suit, in the case of *Brinckerhoff and others* v. *Brown and others*, (6 *John. Ch. Rep.* 139.) And it is a common practice in this court for two or more judgment creditors, having separate judgments, to join in a suit to reach the equitable interests and choses in action of their common debtor, after they have exhausted their remedies at law, by executions upon their respective judgments.

The particular question which arises in this suit, whether two or more persons having separate and distinct tenements which are injured or rendered uninhabitable by a common nuisance, or which are rendered less valuable by a private nuisance which is

a common injury to the respective tenements of each of the complainants, may join in a suit to restrain such nuisance, does not appear to have been raised in England until recently; and then in a single case only, which was not very fully considered. In the case of *Spencer & Ward* v. *The London and Birmingham Railway Company*, (1 *Nicoll, Hare & Car. Railway Cases*, 159,) which came before the vice chancellor of England in 1836, the bill was filed by the landlord and his tenant, for a nuisance which was supposed to be an injury to the interests of each in the property; and an injunction was granted without raising the question of misjoinder of parties.

The same thing occurred in the case of *Sutton and others* v. *Montfort*, (4 *Sim. Rep.* 559,) which came before the same equity judge five years previous; where two tenants of different buildings, having no joint interest, joined with the landlord of both in filing the bill to restrain the nuisance. But in the more recent case of *Hudson and others* v. *Maddison*, (5 *Lond. Jur.* 1104,) which came before him in December, 1841, where five different owners of separate houses had joined in a bill to restrain a nuisance which was a common injury to all their houses, he seems to have taken it for granted that the objection of misjoinder of complainants would be fatal at the hearing; and he discharged the injunction upon that ground alone. (*See* 12 *Sim. Rep.* 416, *S. C.*) Even if that case may be considered as finally settling the question in England, which I presume it does not, as it does not appear to have received the sanction of the lord chancellor, upon appeal or otherwise, I do not consider myself at liberty to follow that decision here; as the question was settled by this court directly the other way, more than twenty years since.

In the case of *Reed and others* v. *Gifford*, (*Hopk. Rep.* 416,) which came before Chancellor Sanford in February, 1825, the complainants, as the chancellor states in his opinion, were several proprietors of different lands and mills, and of separate parts of the natural water-course at the outlet of a lake. The nuisance which they sought to restrain was an artificial channel, cut by the defendant upon his own land, the effect of which

would be to draw off the water of the lake, and thereby to pre-vent it from flowing in its natural channel to the several mills of the complainants, respectively. And he decided that as the acts of the defendant, complained of, were a common injury to all the complainants, there was such a common interest in the subject of the suit as to authorize them to join in one bill; although the injury which each sustained, by the diversion of the water from his individual mill, was separate and distinct.

It is true each of the complainants, in that case, would have had the right to file a bill to restrain the nuisance, which was a special injury to his individual property. But as the relief sought was the same as to all the complainants, there certainly was no good reason for compelling them to file several bills to protect their common right against acts of the defendant, which were injurious to all of them. A similar opinion was expressed by me in the case of *The Trustees of Watertown* v. *Cowen*, (4 *Paige's Rep.* 510;) although from the manner in which the for-mal objection of the misjoinder of complainants was raised in that case, it was not necessary definitively to decide the question of misjoinder of parties. For it is well settled that a mere formal objection of that kind, which is neither raised by demurrer nor by the answer of the defendant, cannot be set up at the hearing as a bar to relief which is common to all the complainants.

In the case of *Marselis and others* v. *The Morris Canal Company*, (*Saxton's Rep.* 31,) where the objection was raised, that the bill was multifarious, because several persons having distinct and independent interests had joined therein as com-plainants, the acts of the defendants, complained of, were neither a joint nor even a *common injury* to all the com-plainants. There the entry upon the land of each complainant and excavating the same, for the purpose of making the canal, without compensating the owner for his property, was a dis-tinct and independent cause of complaint. And it was in nowise injurious to his co-complainants; nor did it in any way interfere with, or affect, their several rights of property. That case therefore was rightly decided upon that ground. In the case under consideration, however, the bill shows that the erec-

Loveland v. Burnham.

tion and continuance of the alleged nuisance, and of every part of it, is a common injury to the separate property and rights of each of the complainants.

It is said the complainants in this case in addition to their prayer for a perpetual injunction to restrain the continuance of the nuisance, have also prayed for an account, and compensation for the damage which they have respectively sustained by the alleged nuisance. The insertion of such a prayer might perhaps render the bill multifarious, if the court, at the hearing, would, upon the case made by the bill, be required to grant such multifarious relief, in addition to the restraining the continuance of the nuisance, which is a common injury to both complainants. But where multifarious relief is not prayed for in the bill, it is not a matter of course to give multifarious relief at the hearing, under the general prayer, in addition to the relief in which the complainants have a common interest. That objection to this bill may therefore be obviated by striking out that part of the prayer which calls for an account of the damages which the complainants respectively have sustained by reason of the alleged nuisance.

The motion to amend by striking out the name of Murray, as one of the complainants, must be denied with $15 costs. But the complainants are to be at liberty to amend their bill, within twenty days, by striking out the prayer for an account and payment of the damages.