## Sylvester G. Scofield et al. v. The City of Lansing et al.

*Chancery Practice: Multifariousness.* Where a great number of persons, owning distinct parcels of land fronting upon a street, join in a bill to restrain the collection of a tax on their several parcels for grading the street, all alleging the illegality of the tax as the ground for relief; and the questions, as presented by the bill, appear *prima facie* to depend upon the same proceedings for assessing the tax, the court can not, on demurrer to the bill, say in advance that the bill is bad for multifariousness or misjoinder. If, in the progress of the cause, the controversy be found to turn upon the legality of such proceedings, or other grounds common to all the complainants, there is no objection to the joinder, and it avoids multiplicity of suits.

If, on the other hand, it should appear, in the progress of the cause that the multiplicity of issues, or other complications growing out of the joinder, would produce such embarrassment as to overbalance the advantages to be derived from settling the rights of the whole in one suit, it is always competent for the court, of its own motion, to dismiss the bill on this ground.

*Common Council: Delegation of power: Void tax.* Where the charter required the Common Council of Lansing (as a condition precedent to the raising of a tax) to declare, by an entry on their minutes, what portion of the expense of a certain improvement should be assessed to the owners of premises to be benefitted thereby, and specifying the amount to be assessed, etc. *Held*, that this duty could not be delegated to commissioners to perform, as the determination of those facts were vital to the levy; and that the tax so levied was void.

*Bill in chancery to remove a cloud: Tax lien.* Where, by the provision of the charter, a tax is declared to be a lien upon the premises assessed, it constitutes a cloud upon the title, and may (if illegal) be removed by a bill in chancery; and this without any reference to the question whether there was personal property from which to collect it.

*Heard October 17th. Decided October 20th.*

Appeal in Chancery from Ingham Circuit.

The bill in this cause was filed to restrain the City of Lansing from collecting a tax for grading a street fronting complainants' premises.

The bill set forth that the complainants, fifty-nine in number, were owners of certain real estate in the City of Lansing, lying adjacent to and fronting on Cedar street, and a road in continuation thereof; and that they petitioned to the Common Council of said city to grade a certain portion only of said street. The following proceedings of the Common Council sufficiently present the facts upon which the case was decided as to the legality of the assessment:

On the 20th day of February, 1865, as appears from the minutes of the Common Council of said city of Lansing, the following preamble and resolutions were adopted:

" *Whereas*, A majority of the resident property holders living on Cedar street, have petitioned the common council for the grading and side-walking of said street; and,

*Whereas*, The same is deemed by the common council to be a necessary public improvement to grade said street from the north line of lot five, block two hundred and forty-four, to the point on said street eight rods south of the south line of Kalamazoo street, and that the estimated expense of said improvement is about $2,500, and that the property to be benefitted by such public improvement is all the property lying on or touching said street, being blocks and parts of blocks two hundred and thirty-seven, two hundred and thirty-eight, two hundred and forty, two hundred and forty-one, two hundred and forty-four, two hundred and forty-five; therefore, be it

*Resolved*, That the council will cause said grading to be done, and that the necessary expense of grading said street shall be assessed as estimated, by the commissioners appointed, upon all lots or parts of lots lying on said street, or benefitted thereby, being blocks or parts of blocks two hundred and thirty-seven, two hundred and thirty-eight, two hundred and forty, two hundred and forty-one, two hundred and forty-four, and two hundred and forty-five, in the city of Lansing, according to the recorded plat thereof; and be it further

*Resolved*, That the estimates and assessments for grading Michigan avenue and Cedar street shall be increased or diminished as in the opinion of the common council necessity demands or equity may require."

The committee of said Council also reported an order appointing commissioners to make an assessment to defray the expenses of the aforesaid public improvement, with the names of the commissioners left blank. On motion, the blanks were filled with the names of A. F. Weller, M. Hudson, and George Grove. Order passed as filed.

May 22, 1865, A. W. Williams, chairman of the committee on streets, proposed a resolution changing the profile of the grade of said Cedar street. In this resolution the grade is referred to as "from Franklin street to a point four hundred feet south of Kalamazoo street."

Referring to said map, it appears that the grade, as there referred to, is some three - quarters of a mile more than that adopted by the resolution of February 20, 1865. June 5, 1865, the committee on streets reported upon bids for grading Michigan avenue and Cedar street. The bill charged that as to Cedar street the bids only covered the grade from the south line of lot five, block two hundred and forty - four, to a point eight rods south of Kalamazoo street. June 12, 1865, the Common Council of said City of Lansing passed the following resolution:

"*Resolved*, That the commissioners to assess the amount of the cost of grading Cedar street from the south line of lot five, block two hundred and forty - four, to a point four hundred feet south of Kalamazoo street, be and hereby are authorized and instructed to assess the amount of the estimated expense upon the whole of the property lying on said street, the aggregate not to exceed $5,540, and said commissioners be hereby required to report said assessment by the 9th day of January."

On the 18th day of September, 1865, the following resolution was passed:

"*Resolved*, That in conformity to the conditions of his contract, the contractor for grading Michigan avenue and Cedar street be and is hereby authorized and instructed to proceed with the least possible delay to grade Cedar street from Mrs. Elder's north line to a point

two hundred feet south of Kalamazoo street, in accordance with the adopted profile of said street."

Referring to the description given of the property assessed to Calista Elder in Exhibit "A," hereto annexed, the bill showed that Mrs. Elder's north line is the north line of lot six, block two hundred and forty-four.

October 23, 1865, the said Common Council passed the following resolutions:

" *Resolved*, That the order passed February 20, 1865, appointing four commissioners to assess a certain portion of Cedar street, be rescinded.

*Resolved*, That the contractor, Mr. Shine, be instructed to complete the grade of Cedar street, not already ordered, from Franklin street to Cedar River.

*Resolved*, That the committee on streets are hereby authorized and instructed to procure a survey of Cedar street, from a point two hundred feet south of Kalamazoo street, to the south city limits."

Oct. 31, 1865, as appears from the minutes of said common council, Alderman A. W. Williams presented an order for the grading of Cedar street from Cedar bridge to Franklin street, and appointing D. M. Bagley, L. D. Preston, and C. Tracy as commissioners to assess the expense of the same. Adopted by yeas and nays.

November 6, 1865, these last mentioned commissioners made their report. November 22, 1865, the assessment roll presented by said commissioners, was unanimously adopted.

The bill further charged that this assesment roll was for the sum of $2,500, and that said amount was duly collected from complainants and the other owners of lands specified in the order of October 31, hereinbefore set forth, and paid into the city treasury.

September 6, 1866, as appears from the minutes of said Common Council, " Alderman Jones presented an order appointing D. M. Bagley, E. Longyear and S. W. Wright,

commissioners to make an assessment to defray the expense of grading Cedar street, which was adopted."

September 17, 1866, as also appears from the said minutes, Alderman Whitney moved to amend the order appointing commissioners to defray the expense of said Cedar street, by inserting the following after the word street: "From Franklin street south to the southern terminus of said Cedar street," and the lots and parts of lots and lands lying and fronting on the street running south from Cedar street to the south line of the city.

Copies of the assessment rolls and maps, representing Cedar street and the adjacent property, were annexed as exhibits. The bill charged that the action of the council was illegal; that it created a cloud upon the title to their said lots, and prayed for an injunction.

The case was heard on demurrer. The injunction previously allowed was dissolved, and the bill was dismissed.

*S. F. Seager*, and *J. W. Longyear*, for appellants.

1. The action of the Common Council was clearly irregular and unauthorized in making the assessment.

*a.* No estimate of the expense of the proposed improvement was ever made.

*b.* There was no determination as to whether the whole or any portion of the expense should be assessed on the owners or occupants of lands benefitted by the improvements.

*c.* There was no designation of the portion of the city that would be benefitted.

The assessment made under the resolution of February 20, 1865, was collected in full. The present assessment rests on the resolutions of September 10, 1866, and September 17, 1866, which are not in compliance with §§ *9, 10, Sess. L. 1865, p. 448,* in a single particular.

2. The treasurer having returned the assessment roll, and the amounts assessed to the complainants having been placed on the general tax-roll of the several city wards, and the warrants of the supervisors attached to the rolls, the taxes constitute a cloud on title.— *Sess. L. 1865, p. 451.*

3. This court has virtually held by a uniform train of decisions that complainants' proper remedy is by injunction.

In *Palmer v. Rich, 12 Mich. 417,* approved in *Grundy's* case, *13 Id. 341,* equity jurisdiction in case of cloud on title arising from illegal tax is expressly affirmed.

4. The bill is not multifarious for misjoinder of parties.

The objection will not be entertained when the justice of the case does not absolutely require it.

The interest of the parties is a common one. "The object of the bill is to avoid the payment of the assessment in question, and every individual assessed has, in that respect, a common interest.— *2 Sim. & Stuart, 67; 1 M. and C. 623, and the cases cited.*

To dismiss the bill on this ground must give rise to great multiplicity of suits, as each complainant would be driven to a separate action at law.

*S. L. Kilbourne,* and *A. E. Cowles,* for defendant.

The bill is multifarious. Fifty-nine complainants, owning, or claiming to own, fifty-nine separate, distinct parcels of land, not in common, but severalty, have joined together fifty-nine separate causes of action to be passed upon by the court in one comprehensive suit.— *Story's Eq. Pl. §§ 279, 289, 530, 540, and notes; Daniells' Ch. Pl. and Prac. 342, and notes; 1 Barb. Ch. Prac. 40; 2 Mason, 181, 200; 6 Johns. Ch. 163; 1 Green's Ch. 294; 5 Paige, 65; 6 Id. 22; 2 Sandf Ch. 344; 1 Sim. and Stuart, 108; 2 Sims. 331; 5 Id. 670; 11 Id. 21; 7 Id. 471; 4 Blackf. 249.*

2. On grounds of public policy, equity will not interfere to restrain the collection of a tax authorized by law, levied

by officers *de jure* or *de facto,* where the power to levy a tax is an incident to their office, although irregularities in the levy and collection may have occurred; but will leave the parties to seek their remedy at law; the facts not bringing the case within any acknowledged head of equity jurisdiction.— *22 Ill. 303; 17 Ia. 379, 386; 18 Wis. 249; 23 N. Y. 316; 25 Id. 312; 6 Metc. 425; 12 Peters, 91; 50 Barb. 60; 22 Ill. 34, 594.*

Irreparable damage is not imminent.

Although the tax be void, equity will not interfere; the legal remedy in such cases is adequate.— *25 Conn. 232; 25 Ill. 43, 47; 1 Ia. 593; 3 G. Green, Ia. 307; 27 Penn. St. 371; 30 Id. 227; 26 Wend. 13.*

CHRISTIANCY J.

The bill in this case is filed against the City of Lansing, and Lewis C. Loomis, their treasurer and collector, by fifty-nine separate owners of real estate situate adjacent to, and fronting on Cedar street, and the road in continuation thereof, in said city, to restrain the collection of a tax upon the lands of the several complainants along said street, for grading the same: the tax being charged to be illegal, and to constitute a cloud upon the titles of complainants.

The defendants demurred to the bill, and the demurrer was sustained in the court below.

The first ground urged in support of the demurrer is misjoinder of complainants, or multifariousness; they having no joint or common interest in the lands assessed.

There is great conflict in the authorities upon this question, and a review of them would require a treatise. But in view of all the authorities, we do not understand that there is any general or inflexible rule on the subject, so far at least as relates to the joinder of parties complainant. So far as any rule can be said to exist, it is one of convenience only, and must depend for its application upon the circumstances of each particular case.— *Story's Eq. Pl.* § *530;*

*Adams Eq. 309, 310; Campbell v. Mackay, 1 Mylne and Craig, 603.*

In *Kensington v. White, 3 Price, 164,* seventy - two different underwriters, upon different policies of insurance, upon which complainants had been severally sued at law for their respective subscriptions, had joined in one bill, the object of which was to establish a defense which was common to all; the bill was sustained as not multifarious.

In *Murray v. Hay, 1 Barb. Ch. 59,* the bill was filed by two persons owning in severalty two dwelling houses, with no common interest in the property, against a defendant for a nuisance, which was a common injury to both, rendering the property of each less valuable. The bill was objected to as multifarious, but sustained by the court. And in *Reid et al. v. Gifford, 1 Hopkins, 416,* the bill was held not liable to this objection, though filed by several proprietors of several lands and mills, and of several parts of a natural water course to restrain a nuisance caused by an artificial channel cut by the defendant on his own land, the effect of which was to draw off the water. This was held such common injury to all the complainants, as to authorize them to join in one bill, though the injury sustained by each was separate and distinct.

The principle involved in these cases can not be distinguished from that in the case before us. While the property or pecuniary interests of the complainants were several, yet the action of the defendants, of which the bill complained and for which relief was sought, was identical as to all the complainants. So in the present case, though the interests of complainants, in the real estate upon which the tax is assessed, is several and distinct, yet the action of the defendants, the proceedings on their part from beginning to end, are identical as to all the complainants, and affect them all in the same manner. Their claims are entirely consistent with each other. — *Adams Eq. 313.*

In such a case, the objection (if any can be recognized on the part of the defendants) for misjoinder of complainants, must rest upon very different grounds from a like objection for misjoinder of defendants having separate and distinct interests, and whose cases are unconnected with each other. In the latter case each defendant may well object to being involved in the contests or litigations of other parties, involving transactions with which he has no connection or concern.

But in the present case there is no such ground of objection on the part of the defendants, for their action, against which relief is sought, has been the same as to all the complainants, and the defendants have the same connection and concern with the whole subject of complaint as to each.

Each complainant must, under the present bill, make out the same case, and no other, that he would have been bound to make upon a bill filed by him separately; and the same defense as to each complainant is open to the defendants, as if separate bills had been brought by each. It is therefore difficult to see in advance how the defendants can be embarrassed in their defense by the joinder of the complainants. And if they can offer no stronger objection to this bill than that fifty-nine separate suits should have been brought against them, instead of one, the bill ought to be sustained on the ground of preventing multiplicity of suits, and a needless multiplication of costs.

The substance of the complaint in the bill is the illegal imposition of the tax; and, if illegal as to one, it is equally so as to the other complainants; if valid as to one, it will be valid as to all. The proceedings, therefore, for the imposition of the tax will, in all probability, constitute the principal subject of litigation, and this is the same as to all.

It is true the title of each complainant may be disputed, and they may each be put to the proof. If any one of

them should then fail in making out his title, the bill would be dismissed as to him.

If, in the progress of the cause, it should become evident that such embarrassments must arise in consequence of the multiplicity of issues, or other complications growing out of the joinder of all these complainants, as to overbalance the advantages to be derived from settling the rights of all in one suit, instead of separate suits by each, it is always competent for the court (if no mode of severance can be devised) to dismiss the bill on this account of their own motion.— *Greenwood v. Churchill, 1 M. and K. 546.*

But we can not say, a *priori,* that any such practical difficulty is likely to arise from the joinder of the complainants. Indeed, we think such a result highly improbable. We can not, therefore, sustain the objection on demurrer.

The only remaining question is, whether, upon the facts stated in the bill, the action of the defendants, in assessing the tax, has been illegal, and has resulted in casting a cloud upon the title of the complainants.

Now, without setting forth here in detail the various orders and amendments in reference to the grading of Cedar street, prior to September 6, 1866, it is sufficient to say that those prior orders, and the whole previous action of the council, whether valid or not, had expended their force upon the tax assessed in November, 1865, which was collected and paid, and the powers and functions of the commissioners appointed under the former orders had ceased and terminated.

The tax here in question, purporting to be based upon the resolution of the council of September 6, 1866, and the amendment of September 17, 1866, was a new and independent tax, extending over a different area from the prior taxes assessed under the former resolutions, and in no way connected with or supported by them. And as a condition precedent to the power of the council to order the raising of this tax, or to authorize commissioners to assess it, it was

necessary, at least (saying nothing of the prior declaration required by section 9, to be entered on their minutes) that after ascertaining the estimated expense of such improvement, they should "declare, by an entry in their minutes, whether the whole, or what portion thereof, should be assessed to such owners and occupants of houses and lands to be benefitted thereby, specifying the sum to be assessed, and the portion of the city which they deemed to be benefitted by the improvement." The whole sum to be raised and the portion to be assessed upon the property benefitted, could only be determined by the Council. The power to determine these matters could not be delegated to the commissioners. Their determination of these points was vital to the validity of the tax, without which no authority existed to assess it. This action was entirely omitted.

There was also an entire failure to comply with the provisions of the tenth section. The order to the commissioners (to say nothing of the other matters required to be inserted in it) should have directed the commissioners to make the assessment "upon all the owners and occupants of lands and houses within the portion or part so designated, of the amount of expense in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire by making such improvement."

No such order was made or certified by the clerk as required. And no presumption, therefore, can be made that the assessments were made with any reference to the benefits or advantages to arise from the improvement.

These defects are not mere irregularities; but show a total failure to acquire the power or jurisdiction to assess this tax.

The tax was therefore clearly void and illegal; and the only remaining question is whether it constituted a cloud upon the title.

The tax roll having been delivered to the treasurer for collection, it will be seen that the tax is declared by the

17th section of the charter to be a lien upon the premises upon which the same was assessed. This lien, we think, constitutes a cloud upon the title, which complainants are entitled to have removed in this proceeding; and this, without any reference to the question whether they had personal property from which the tax might have been made by levy and sale. We do not think it a sufficient answer to the relief asked, to say to the complainants that they might get rid of this cloud upon their title by paying the unauthorized and illegal exaction which creates the cloud. And though the lands can not be sold for the tax until returned unpaid, and the amount re-assessed by the alderman of the proper ward — *Section 17* — yet the lien remains; and the taxes are to be returned and the premises sold or forfeited for non-payment thereof, as provided by law, for the non-payment of ordinary city taxes — that is to say, they are to be sold by the Auditor General, and deeds given which are to be *prima facie* evidence of the regularity of all the proceedings, and of title in the purchaser. — See *Palmer v. Rich, 12 Mich. 414.*

The decree of the court below, dismissing the bill, must, therefore, be reversed, with costs, and the demurrer must be overruled, and the record remitted to the court below for further proceedings.

COOLEY CH. J. and GRAVES J. concurred.

CAMPBELL J.

While I do not feel sure that the principle on which bills of peace to settle numerous identical rights, aggrieved by the same act, would have originally reached a case like the present, the practice is convenient, and I concur with my brethren in sustaining this bill and in giving relief. The rule can not apply where distinct issues of fact are presented, and whenever such a case arises it would render the suit multifarious, and bring it within the principle of *Kerr*

*v. Lansing*, decided at the last April term. But where no issue is made, except upon the legality of the acts complained of, and the case is so presented as to enable the court to do complete justice, one suit is probably as available as a greater number.