ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

JOHN ROWBOTHAM and HARRISON ROBBINS

*v.*

S. PRESTON JONES.

1. Several owners of distinct tenements may join in a suit to restrain a nuisance or other grievance which is common to all of them, affecting each in a similar way, but may not so join when the object of the suit is to restrain that which does a distinct and special injury to each of their properties.

2. A nuisance is common to several complainants when it affects all of them, not precisely at the same instant and in the same degree, but at the same period of time and in a similar way, so that the same relief may be had in the suit, whether there be one, two or a dozen plaintiffs.

22 [337]

On bill and demurrer.

*Mr. L. M. Garrison,* for the demurrant.

*Mr. Edward Dudley* and *Mr. George M. Robeson, contra.*

THE CHANCELLOR.

· The bill is filed by two gentlemen who live in separate dwell-ings, each of which is a few hundred feet from a private insane asylum which has lately been established and is maintained by the defendant in three detached buildings. It alleges that each of the buildings used for asylum purposes was originally a pri-vate dwelling; that the grounds about the buildings are not guarded by suitable fences or walls to prevent the escape of insane patients; that a large number of insane persons, many of whom are violent, are habitually kept in the asylum; that numbers of them are allowed to roam about the asylum lawns and in the public highways of the neighborhood, either unattended or inef-ficiently attended; that patients have been suffered to escape from the asylum, not only in the day but also at night, and wander about the neighborhood; that fights between patients and their attendants frequently take place upon the asylum lawns and in the adjoining public highways, in which "terrible" language is used; that insane patients are permitted to make indecent exposure of their persons on the asylum lawns, at the fences about them and at the windows of the asylum buildings, and to use offensive and indecent language; that frequently violent female patients scream for hours at a time, both in the day and night, at the top of their voices, so that they can be heard for a distance of a half mile from the asylum, and that these yells are of a most distressing character, as if the patients were in great terror or in bodily pain; and that insane patients, suffered to become intoxicated, roam about, attempt to enter the houses of the complainants, and thus keep their families in terror.

The bill exhibits that all indecent exposures cannot be seen, and that all indecent language cannot be heard, at the same time, at the houses of both the complainants, but that, in habitual occurrence, thereby, at one time one complainant is annoyed at

his house, and at another time the other complainant is annoyed at his house, and thus discomforture is produced to both.  Also, that while all fences surrounding the asylum buildings are insecure, the fence which separates those buildings from Mr. Rowbotham's house is particularly insecure.

The defendant demurs to the bill, because he complains that it does not exhibit a common nuisance to both complainants, which affects each of them in a similar manner, but, on the contrary, distinct nuisances to each of the complainants, affecting each of them in a different way, and that, therefore, the complainants have improperly joined in the action.

Courts of equity have always exercised a sound discretion in determining whether parties are properly joined in a suit.   Their object has been to adopt a course which will best promote the due administration of justice without multiplying unnecessary litigation on the one hand, or drawing suitors in a needless and oppressive expense and confusing the courts with many issues on the other.   In pursuit of this object it may be said that it is the established rule in this state, that several owners of distinct tenements may join in a suit to restrain a nuisance or other grievance which is common to all of them, affecting each in a similar way, but may not so join when the object of the suit is to restrain that which does a distinct and special injury to each of their properties.   Instances of the latter class are found in the cases of *Marselis et al.* v. *The Morris Canal and Banking Co., Sax. 31,* where the bill was filed by thirty-eight complainants, for themselves and all others who should come in and contribute, to restrain a canal company from using and occupying, with its canal, distinct parcels of land severally owned by the different defendants, until compensation should be made therefor, and *Hinchman et al.* v. *The Paterson Horse R. R. Co., 2 C. E. Gr. 75,* where several owners of distinct lots of land fronting upon a street in a city united in a bill to restrain the construction of a horse railroad upon that street, and *The Morris and Essex R. R. Co.* v. *Prudden, 5 C. E. Gr. 531,* where the several owners of separate parcels of land joined as relators in an information by the attorney-general, which sought to restrain a railroad company from laying

Rowbotham *v.* Jones.

an additional track in a highway, and *Davidson* v. *Isham, 1 Stock. 186,* and *Demarest* v. *Hardman, 7 Stew. Eq. 469,* in both of which relief from a special injury to one complainant was sought by the same bill in which relief was sought from an injury common to all. Examples of the former class are given in the last two of these cases.

In *Davidson* v. *Isham,* Chancellor Williamson said : " Several complainants have united in this bill. To this there is no objection, if the nuisance is common to all. For instance, if it is the noxious fumes and smoke proceeding from the manufactory, which are the occasion of the grievance, this grievance is a common one." And in *Demarest* v. *Hardman,* Vice-Chancellor Van Fleet said : " Several persons may join in a suit to restrain a nuisance which is common to all and affects each in the same way. For example, if a slaughter-house is erected in a popular part of the town and the offensive and deleterious odors there generated are allowed to diffuse themselves throughout the neighborhood, all injuriously affected by them may join in the same suit ; for in such a case, the injury is a common one, and the object would be to give protection to each suitor in the enjoyment of a common right." The language used in the opinion of the court of errors and appeals in *The Morris and Essex R. R. Co.* v. *Prudden,* at the March Term, 1869, of that court, appears to have created some doubt as to the right of several persons, injuriously affected in the same way, by a grievance common, to unite in a bill for relief, and, in consequence, on the 8th day of May, in that year, Chancellor Zabriskie promulgated a rule of this court in the following language : "Any number of persons, severally owning or possessing distinct tenements injuriously affected by a common nuisance or other common grievance, may join in a bill for injunction or relief ; provided, that it shall be in the discretion of the chancellor to strike out of the bill any of such complainants when, in his opinion, the justice of the case or convenience of proceeding shall require it." *Appendix to 7 C. E. Gr.* Upon examining the language of the opinion last referred to, I fail to perceive that there was necessity for this rule, but, however that may be, the rule exists in recognition of an established principle.

Rowbotham v. Jones.

The leading American case supporting this principle is *Murray* v. *Hay, 1 Barb. Ch. 59,* decided by Chancellor Walworth in 1845.

The defendant's insistment, under his demurrer, is, that the bill unites special grievances to Mr. Rowbotham, by reason of indecent exposures to his household, which were not visible from the house of Mr. Robbins, and by reason of the special danger from roaming lunatics that he experienced because of his specially insecure fence, with those matters which were common to both complainants, in that they affected them both at the same time.

It is to be remembered that the bill alleges, that each complainant suffers from similar, though perhaps not the same, exposures, and that each apprehends danger because of insufficient fences, though the fence of Mr. Rowbotham is lower and the danger to him is, perhaps, greater. The difference in the annoyance, to the several complainants, from the indecent exposures, is only in instants of time, within one general period, and, from the insecurity of the fences, is only in degree. Each complainant suffers similar annoyance in a similar manner, from both these causes. The repeated and habitual occurrence of the exposures, first in one place and then in another, continually shocking and creating annoying apprehension, and not the isolated instances of exposure, make the nuisance complained of. If it were otherwise, it might, by parity of reasoning, be said, that an obnoxious slaughter-house or factory does not create a common nuisance to inhabitants of surrounding property, because at one time the wind blows the deleterious odors and fumes in one way and at another time blows them in an opposite direction, or, because the smells, which were blown to the north yesterday, are not the identical smells that are blown to the south to-day, or, because distances, the atmospheric changes, or some structural conditions of buildings, cause degrees of pungency in which the offensive odors or fumes, from time to time, reach the several complainants.

The meaning of the rule, so far as it permits several to join as complainants, is, that all the grievances, complained of, shall affect all the complainants, not precisely at the same instant and in the same degree, but in the same general period of time and

in a similar way, so that the same relief may be had in the single suit, whether there be one, two or a dozen plaintiffs.

I think that the complainants are properly joined in the bill before me, and I will therefore overrule the demurrer, with costs.