WEST POINT IRRIGATION COMPANY, PLAINTIFF AND RESPONDENT, *v.* MORONI AND MT. PLEAS- ANT IRRIGATING DITCH COMPANY ET AL., DEFENDANTS AND RESPONDENTS. RASMUS CLAW- SON ET AL., INTERVENERS AND APPELLANTS.

WATER RIGHTS—INTERVENTION—SUFFICIENCY OF COMPLAINT.

This was a suit in intervention to determine certain rights to the water conducted from the Sanpitch river, through interveners' ditch, onto lands which came into the "rightful possession" of said interveners. To the complaint in intervention, defend- ants filed a demurrer, alleging that it was not shown by the complaint whether said lands claimed to be owned by inter- veners are owned or possessed in common or severalty by intervener or those he represents, nor who the parties are that claim the waters, nor their individual interest therein. *Held,* that where a complaint avers that the intervener and those he represents own an undivided interest in the said ditch in com- mon, and that they came into the rightful possession of the lands watered by said ditch, and known as the "Ephraim North Meadows," and where it appears from the complaint that the intervener and those whom he represents have a com- mon or general interest in the question involved in the action, and either gain or lose by the direct operation and effect of the judgment, and that the number of persons who would be joined as interveners is so large that it would be impracticable to bring them before the court, the complaint, although not containing the unerring certainty that is desirable, will be sufficient to give the interveners a standing in the court, under sections 3184 and 3190, Comp. Laws Utah 1888.

(No. 738. Decided Oct. 29, 1896.)

Appeal from the Seventh district court, Sanpete county. Hon. Jacob Johnson, *Judge.*

Petition by the West Point Irrigation Company against the Moroni and Mt. Pleasant Irrigating Ditch Company and others, in which Rasmus Clawson and others intervened. From a judgment sustaining a demurrer to their complaint interveners appeal. *Reversed.*

*L. R. Rhodes,* for appellants.

In numerous cases it has been held, that where a number of persons, each having a separate piece of property held by separate and distinct titles, were threatened or suffering from an act that affected them all in the same manner, they might unite in one suit and by one decree obtain complete relief as to all. The cases of *Cadigan* v. *Brown,* 120 Mass.; *Ballou* v. *Inhabitants of Hopkinton,* 4th Gray 324, and *Murry* v. *Hay,* 1st Barb. Ch. 59, are the best illustrations of this doctrine. In *Cadigan* v. *Brown,* the plaintiffs were individual owners of separate lots abutting on a passage-way, each holding under a distinct title from a different grantor. Defendant began an erection which would permanently block up the passage and interfere with each plaintiff's right of way, and it was therefore a nuisance.

In the opinion, the court says: "The plaintiffs, although they hold their rights under separate titles, have a common interest in the subject of the bill. They are affected in the same way by the acts of the defendant, and seek the same remedy against him. The rights of all parties can be adjusted in one decree and a multiplicity of suits prevented."

In the case of *Ballou* v. *The Inhabitants of Hopkinton,* individual owners of separate mills on the banks of the stream each drew a supply of water for his own mill from a dam higher up the stream which had been built by all the proprietors. The defendants had begun to draw water from this dam, not removing or in any way inter-

fering with the structure itself, but simply diverting the water so that the supply for each mill was lessened and might be rendered insufficient.

It was held that in one joint suit in equity defendants might be retrained by injunction to prevent a multiplicity of suits.

Our statute provides broadly: "When the question is one of common or general interest, one or more may sue or defend for the benefit of all."

No stronger case can be imagined than the case at bar calling for the application of this doctrine. The relief thus acquired, in a manner common to all, does not depend upon the amount, extent or quantity of each individual interest, but applies in principle to the whole, en masse, let their individual interests be great or small.

The demurrer interposed by the defendants is on the following grounds: (*a*) "It is not shown whether the lands proposed to be irrigated from the ditch are owned in common or in severalty." (*b*) "About one hundred persons other than Clawson are interested as owners of certain lands and entitled to the use of the water of the stream for irrigating the same, and that each of them should be made a party so that the right of the defendants and all others may be finally determined and that there may be parties to the record of the claim of use of water for a given quantity of land."

If this doctrine is to prevail, then, in cases of this kind. the ditch is to be ignored and its ownership not considered, except merely as a means of conveying the water, and separate decrees go to each individual land-owner for a given quantity of water. Each individual landowner would then become the owner of the appropriation, and the individual association or corporation owning the ditch would become simply common carriers destitute of

14 UTAH—9

any ownership in the appropriation of the water, a species of judicial latitudinarianism that is hinted at in a few of the Colorado decisions, but quickly abandoned for the reason that it was impracticable.

An ownership of land is not a necessary precedent to the ownership of an appropriation of water.

*C. S. Varian,* for defendants and respondents, *Thurman & Wedgewood,* for plaintiffs and respondents.

If each of these interveners own land in severalty, and is entitled to the use of water necessarily and reasonably required for the irrigation of such land, in order to adjudicate and determine his rights, not only against the original parties to the suit, but as against his co-interveners, it is necessary for him to allege and prove his appropriation together with the necessity for his use as claimed. Unless he shall allege it, he states no cause of action entitling him to be heard. If without allegation the proofs of such appropriation and use be admitted and made, the other parties, including his co-interveners, as well as the plaintiffs and defendants herein, are taken at a disadvantage because, not having been advised of his interveners they came to the trial without preparation or ability to contest the same.

Even as to the intervener, named Clawson, nothing is shown upon this record as to how much he individually claims, nor as to what quantity of land his title runs. How are we to meet him or contest any of the evidence he may produce? Referring to the bill of intervention, the material parts of which have been stated, it appears that the contention is that the rights of the intervener have been interfered with by the diversion of the waters of the river by plaintiff and defendants miles above the point of diversion of said waters from the river by the intervener. No question at all is made of an interference

with the *ditch* of interveners located 6½ miles below Moroni, which is, as stated, simply a *conduit* by which the waters are diverted upon their lands; in the *ditch* all of them have a common interest; for the breaking down or the destruction of that *ditch* the injury to one would be the injury to all as co-tenants in the *ditch* and its ownership; all or any number as well as the whole might protect the right and redress the injury. The reason is plain. The relief granted at the suit of one or two or more in any number less than the whole, would accrue to the benefit of the whole if the injunction was granted. The suit of one would be just as effective in its protection of the whole number as if they all had been joined and put their claims right upon the record. But as it stands the question is very different. If these people are entitled in severalty, each one has a particular claim depending upon the acreage of his land, the date and manner of his appropriation, which may be enforced, not only against the original parties to the suit, but against every one of his co-interveners; each must show an original appropriation, each must show the necessity for the use continuing up to the present time. Only to the extent of his necessity may he maintain and prove his original appropriation.

The rights of some may have been lost by abandonment; some as claimed may never have originated, or may fail through lack of proof; in any event it is manifest that both plaintiff and defendants and all persons properly connected with this suit, claiming rights to the use of the water of the stream, each and all, are entitled to contest *seriatum* every claim so made. This shows, not that the claims of interveners may not be joined and presented in one suit, but that they must be set out and pleaded, and to that end, that each person that desires to be heard must by name be put upon the record.

as an intervener, stating his claim and its elements, and thereby, while seeking to avail himself of the prospective benefits of the litigation already instituted without expense or burden to him, also incur the risks and costs necessarily incident to his failure to make good his title. Each is a plaintiff and must prove his case against every other party.

The general rule is that all parties in interest must join in the record. Examples of these exceptions to the general rule are given by the text writers and in decided cases, and the case at bar finds no place among them. Story Equity Pleadings, sec. 97-121; *Newcomb* v. *Horton*, 18 Wis ; *Bonton* v. *Brooklyn*, 15 Barber 375; *Schultz* v. *Winter*, 7 Nev. 133.

The intervention should have been amended so as to determine upon its face whether there is a common and general interest in the intervener and those whom he seeks to represent in the waters of this river for irrigation of the North Ephraim Meadows, or whether the interest of each is several. In this last event it is clear that each should have been made a party to the record. *Farmers' Ditch Co.* v. *Agricultural Ditch Co.*, 3 Col. App. 225.

MINER, J.:

Plaintiff filed its complaint against the defendants for the purpose of determining its rights to a certain stream of water known as the "Sanpitch River," in Sanpete county. Defendants answered, claiming interests in the water of the stream, etc. The intervener Rasmus Clawson and others filed their petition for leave to intervene, and, by leave of the court, filed an amended complaint in intervention. The defendants filed a demurrer to the complaint in intervention, alleging that the same does not state facts sufficient to constitute a cause of action,

nor any ground for a rightful intervention; that it is ambiguous, uncertain; and that it is not shown whether said lands claimed to be owned by interveners are owned or possessed in common or severalty by intervener or those he represents, nor who the parties are that claim the water, nor their individual interest therein, and because of defect of parties. The demurrers were sustained. Interveners elected to stand upon the complaint, and thereupon said complaint in intervention was dismissed, with costs. Interveners appeal from this order and judgment.

Section 3190, Comp. Laws Utah 1888, provide that "*  *  * any person may, before trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both.  *  *  * " Under this section, it was competent for the interveners to file their complaint in intervention. Usually, the interest which entitled a person to intervene in a suit between other parties must be in a matter in litigation, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. Pom. Rem. & Rem. Rights, §§. 429, 430. Section 3184, Comp. Laws Utah 1888, provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Under this provision of the statute, there must be a question of common or general interest to many persons involved in the action, and the question to be determined should be one of common or general interest to all of them, or such persons should be so numerous that it would be impracticable to bring them all before the court; and, in order that the intervener may be entitled to maintain his

action, the facts showing that these requirements of the statute have been complied with must be alleged by the intervener as the ground and reason for adopting this peculiar form of action permitted by the statute. "The complaint or petition must show either that many persons have a common or general interest in the questions involved in the action, or else that the number of persons who would be joined as plaintiffs or defendants, if the ordinary rule was applied, is so very great that it is impracticable to make them all actual parties. Unless the pleading contains these averments, the action must be regarded as though brought by the single plaintiff or against the single defendant named. It should be carefully observed that this provision does not create any new rights of action, nor enlarge any of those now existing. The suit cannot be sustained by one of the representatives of the many others who really sue in his name, unless it could have been maintained if all these many others had been regularly joined as co-plaintiffs, or unless it could have been maintained by each of them suing separately and for himself. The statutory provision is simply a matter of convenience, a rule of form, a means of enabling many persons to have their rights determined without their actual appearance in court as litigant parties." Pom. Rem. & Rem Rights, §§ 389-392; *McKenzie* v. *Lamoureux*, 11 Barb. 516; *Ballou* v. *Inhabitants*, 4 Gray 324; *Cadigan* v. *Brown*, 120 Mass. 493; *Murray* v. *Hay*, 1 Barb. Ch. 59.

It appears from the complaint "that interveners and company, with about one hundred other persons, own in common a certain ditch, known as the 'Ephraim Meadows Ditch,' which said ditch is taken from the Sanpitch river, in Sanpete county, on the east side of said river, and at a point about $6\frac{1}{2}$ miles below the town of Moroni; that all the matters and things set forth in this petition are of a

common and general interest to each and all of said parties, said parties owning undivided interests in said ditch; also, that it is impracticable to bring all of said parties before the court, by reason of their great number; that intervener, at the request of all parties, owners of an interest in said ditch, here intervenes in his own behalf and in behalf of all others of common and general interest; that said ditch is used for the purpose of irrigating 1,200 acres of land, known as the 'Ephraim North Meadows'; that said lands are and have been used for raising hay, and require and have required water to be applied to them in order that they may become productive; that the only source from which water can be obtained is from the stream known as the 'Sanpitch River,' said lands lying adjacent to said stream; that in the year 1855, and long before the plaintiff herein or its grantors, or either of the defendants or their grantors, had made an appropriation of water for any purpose whatever from said Sanpitch river, or had begun to cultivate any lands, this intervener and those whom he represents, either in person or by their grantors and predecessors, came into the rightful possession of the lands in the aggregate, known as the 'Ephraim North Meadows,' and thereupon, and during the year 1855, and each year thereafter, appropriated from said Sanpitch river; by means of dams and ditches, water sufficient to irrigate said lands each year thereafter, except when prevented by the wrongful acts of the prior parties to this suit, as hereinafter stated; * * * that commencing with the year 1855, and continuing for each year thereafter, except the years hereinafter mentioned, intervener and those whom he represents, either personally or by their grantors, have diverted or appropriated from said river, in manner as aforesaid, sufficient water to irrigate said lands, known as the 'Ephraim North Meadow'; and such

water has been appropriated and taken from said river in manner as aforesaid, commencing on or about the 1st day of May each year, and continuing until the 10th day of July of each year," etc. It sufficiently appears from the complaint that all the matters and things set forth in the complaint are of a general or common interest to the said intervener and the 100 persons he represents, and to each and all of said parties; and that said parties own an undivided interest in the said ditch in common; and that they came into the rightful possession of the said lands in the aggregate known as the 'Ephraim North Meadows,' consisting of about 1,200 acres of land, and appropriated the water from said stream to irrigate said land, etc. The petition shows with reasonable clearness, although not with that unerring certainty that is desirable, that said intervener and those he represents have a common or general interest in the question involved in the action, and that the number of persons who would be joined as interveners is so large that it would be impracticable to bring them all before the court. The petition seems to cover both provisions of the statute. We are of the opinion that the court erred in sustaining the several demurrers, and in dismissing the complaint in intervention. The judgment, order, and decree of the court below is set aside, with costs, and the cause is remanded for further proceedings.

ZANE, C. J., and BARTCH, J., concur.