## HUNTINGTON *v.* PALMER and another.

*(Circuit Court, D. California. 1881.)*

1. EQUITABLE MAXIM.
   He who comes into equity must do so with clean hands.

2. SAME—APPLICATION OF — RAILROADS — STOCKHOLDERS — STATE TAX IN PART ILLEGAL—DEMURRER.
   Where a stockholder, on behalf of himself and all others who should come in and contribute to the expense of the suit, brought a bill in equity against the corporation, and the tax collector of a particular county, to enjoin the collection of a state and county tax as being illegal and unconstitutional, and, as such, utterly void, it was *held*, that, as the bill did not allege payment of so much of the taxes as must be conceded ought be assessed and paid, it was demurrable. An averment in the bill of a readiness to make such payment is not enough.

SAWYER, C. J. This is a bill in equity brought by a stockholder of the Central Pacific Railroad Company, on behalf of himself and all other stockholders who shall come in and contribute to the expense of the suit against the corporation and the tax collector of Alameda county, to enjoin the collection of a state and county tax, as being illegal and unconstitutional on various grounds, and as such utterly and *in toto* void. The defendant Palmer demurs to the bill for want of equity. The bill contains the usual allegations of such bills brought by stockholders, but it fails to allege the payment or even the tender of any part of the tax, and for the want of this allegation alone, without reference to any other point involved, the said defendant insists that the bill is without equity and must be dismissed. He relies upon the *State Railroad Tax Cases*, 92 U. S. 575, and subsequent decisions, to sustain the position. There were three of the state railroad tax cases, neither of them brought by the corporation itself. In the first, the trustees and mortgagees holding the road for the security of the bondholders were complainants; in the last two, the complainants were stockholders, precisely as in this case. So far, then, as the parties are concerned, the last two cases, at least, were like this, and governed by the same principles. There was a willingness to pay so much of the taxes as might have been legally assessed alleged in the bills. It was also alleged that the assessments were wholly void. Page 589. It is true, the court in those cases held that the objections made to the tax were not well founded; but another point, as to want of an allegation of payment, was fairly presented by the bill, and as distinctly decided. It having been fairly presented by the record, argued, considered, and decided, it cannot, as is claimed by complainant, be considered a mere *dictum*,

because another point was also presented and decided, requiring the same decree. *Starr* v. *Stark*, 2 Sawy. 639; affirmed, 94 U. S. 488. The latter might as well be called a *dictum* as the former. Indeed, since it was necessary to dismiss the bill on the point of equity jurisdiction alone, without regard to the other points presented, the opinions on the other points, if any, were *dicta*.

The court says:

" But there is another principle of equitable jurisprudence which forbids in these cases the interference of a court of chancery in favor of complainants. It is that universal rule which requires that he who seeks equity at the hands of the court must first do equity.

" The defendants in all these cases are the clerks and treasurers of the counties—the clerk who makes out the tax list and the treasurer who collects the taxes. These taxes are both the state and county taxes. It is clear, from the statements of the bills, and from what we have already said, that there must be in every county mentioned a considerable amount of real estate and personal property coming within the character of local tangible property, and subjected to taxation on precisely the same principles, and no other, that all other personal and real estate within the county is taxed. It is equally clear that the road-bed within each county is liable to be taxed at the same rate that other property is taxed. Why have not complainants paid this tax? In reference to the latter, it is said that they resist the rule by which the value of their road-bed in each county is ascertained, and therefore resist the tax? But, surely, *it should pay tax by some rule*. If the rule adopted gives too large a valuation in some counties, it must be too small in others. What right have they to resist the tax in the latter case? And in the former, is the whole tax void because the assessment is too large? Should they pay nothing, and escape wholly, because they have been assessed too high? These questions answer themselves. Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them.

" It is a profitable thing for corporations or individuals, whose taxes are very large, to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when in the end it is found that but a small part of the tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction. It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The state is not to be thus tied up as to that about which there is no contest, by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed of a receipt in full for all the taxes assessed.

" We are satisfied that an observance of this principle would prevent the

larger part of the suits for restraining collection of taxes which now come into the courts. We lay it down with unanimity as a rule to govern the courts of the United States in their action in such cases."

As we understand it, the court distinctly holds that some tax, according to some rule of taxation, ought to be paid on all taxable property, and that a bill which does not allege a payment of so much of the tax as the party concedes, or, if not conceded, may be seen from the bill or shown by affidavit, ought to be assessed and paid, does not present any equity to justify an injunction. And the court takes particular pains *to say to the circuit courts that they are expected to conform to this view.* Its language is: "We lay it down with unanimity *as a rule to govern the courts of the United States in their action in such cases.*" Id. 617. The defendant endeavors to distinguish the present case from those cited, on the ground that in the latter the assessments were merely unequal, and therefore only void as to the excess; while in this case the tax is unconstitutional and void in its entirety. We have always supposed that the assessment of a tax *in solido*, which is void as to part, is wholly void. And the bills in the cases cited alleged the tax to be wholly void. Id. 589. But, however this may be, the supreme court at the last term determined this precise point, also, adversely to defendant, in the *German National Bank of Chicago* v. *Kimball, Collector, etc.* The bill was dismissed by the circuit court on demurrer. It alleged the tax to be in violation of both the acts of congress and the constitution of the state of Illinois, and wholly void, as in this case. The decree dismissing the bill was affirmed by the supreme court. The supreme court, in affirming the decree, says:

"We think there are two fatal objections to the bill. The first of these is that *there is no offer to pay any sum as a tax which the shares of the bank ought to pay.* We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay."

The court further says:

"The bill attempts to evade this rule *by alleging that the tax is wholly void*, and therefore none of it ought to be paid; and that, by reason of the absence of all uniformity of values, it is impossible for any person to compute or ascertain what the stockholders of the complainant bank ought to pay on the shares of the bank."

This is precisely the distinction sought to be drawn here between this case and the *State Railroad Tax Cases.* But the supreme court,

in considering this distinction, when sought ,to be set up in the *German Bank Case*, quoted several passages from its decision in the *Railroad Tax Cases*, which need not be repeated here, and then said: "These principles are *sufficient to decide the case*, and were declared by this court in a case arising in the same state and under the same constitution and revenue laws with the one now before us." The decree dismissing the bill was affirmed on the ground that there was no allegation of a payment of a part of the tax. Thus the supreme court has itself denied the distinction sought to be established in this case; and its decisions are controlling in this court. The able decisions of the supreme court of Wisconsin, relied on by defendant, conceding them to adopt a different view, must yield in the national court to the superior authority of the supreme court of the United States.

We are unable to distinguish the present case from those already cited from the supreme court. Under the decisions in those cases, the bill presents no sufficient equity to justify an injunction, because there is no allegation of payment of so much of the tax as must be conceded ought to have been assessed and paid.

On the authority of the cases cited, the demurrer must be sustained on the grounds indicated, and the ground being jurisdictional it becomes unnecessary, if not improper, to consider any of the other points raised by the bill and demurrer. As it is understood that the bill cannot be truthfully amended, so as to avoid the objection considered, it must be dismissed; and it is so ordered.

HOFFMAN, D. J., concurred.