[Argued July 24, 1893; decided August 1, 1893.]

## WELCH v. CLATSOP COUNTY.

[ S. C. 33 Pac. Rep. 934.]

TAXATION — INJUNCTION — TENDER OF TAX.[*]— Equity will not interfere by injunction to restrain the collection of a tax unless it is unauthorized, or, if authorized, is assessed upon property not subject to taxation, or the persons imposing it were without authority in the premises, or they have proceeded fraudulently; nor will it interfere in any case until plaintiff has tendered the amount of tax that can be shown to be due. Particularly is this true where the complaint discloses the value of the property, and the rate of taxation, so that the legal tax is a mere matter of computation.

Clatsop County: THOMAS A. McBRIDE, Judge.

Suit in equity by Nancy Welch, G. Wingate, The Astoria Investment Company, Samuel Elmore, and G. W. Sanborn, partners as Elmore, Sanborn & Co., Samuel Elmore, J. G. Megler, A. J. Megler, W. E. Warren, M. S. Warren, and R. P. Elmore against Clatsop County and

---

*NOTE.—For previous Oregon decisions to the same effect, see *Brown* v. *School Dist. No.* 1, 12 Or. 345; *Or. & Cal. R. R. Co.* v. *Lane County*, 23 Or. 386, and note; and *Goodnough v. Powell*, 23 Or. 525.— REPORTER.

H. A. Smith, its sheriff, to restrain the collection of a tax. A demurrer to the complaint having been sustained, the plaintiffs appeal from the decree of dismissal.   Affirmed.

*G. C. Fulton* ( *Chas. W. Fulton* on the brief ), for Appellants.

*W. N. Barrett*, district attorney, and *Frank J. Taylor*, for Respondents.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

This is a suit for an injunction to restrain the sheriff of Clatsop County from executing a tax-warrant, issued out of the county court, directing him to collect certain delinquent state and county taxes for the year 1891.   The general ground on which relief is sought is that the proceedings in making the assessment roll and levying the tax thereon were so irregular and illegal as to render such tax void.   A demurrer to the complaint for the insufficiency of the facts alleged was interposed and sustained, whereupon, the plaintiffs declining to further plead, a decree was rendered by the court dismissing the suit, from which decree this appeal is brought.

The averments of the complaint show that the assessment roll filed by the assessor was crude and imperfect; that it was filed after the time required by law, without any order extending the time for such filing, and that there were various irregularities in the subsequent proceedings in connection therewith; but the main allegations upon which the plaintiffs rely, as showing the invalidity of the taxes assessed, and their right to the relief sought, are that the assessor did not give the notice required by law of the meeting of the board of equalization; that no meeting of such board was held at any time for the purpose of examining the assessment roll so filed

and returned; that neither the plaintiffs nor any other taxpayers were allowed the privilege of an examination of such roll, nor were they afforded an opportunity of appearing before such board, or any board, or of being heard in regard thereto; that plaintiffs' property was erroneously and wrongfully assessed at a sum in excess of its actual value, and in excess of the proportionate value of the property of a like character and similarly located; and that, by reason thereof, they are required to pay a larger proportion of the taxes of the county than they otherwise would if the same was correctly valued. The complaint then proceeds to describe the property owned by each of the plaintiffs liable to taxation, and the valuation thereof. To illustrate, it is alleged "that there is assessed against G. Wingate on the said assessment roll made by said county clerk property placed by the county clerk at the valuation of fourteen thousand two hundred and ninety-three dollars, making, as appears thereon, a tax due from plaintiff of the sum of three hundred and sixty-two dollars and nineteen cents; but if said plaintiff had known that such roll had been made, or was in the process of making, and had the right of being heard in regard thereto, and had a board of equalization met and examined the same, the valuation would have been greatly reduced, for that the said valuation placed on the property of the plaintiff G. Wingate was and is far in excess of the true cash value thereof, and is much higher than that on property of like nature similarly situated. That the true cash value of said property does not exceed ten thousand dollars."

It is also alleged that the county court made an order levying nineteen and one half mills on the dollar upon all the taxable property in the county, and although there is an averment that the court was without authority to make such order, it is sufficient to say that there is no doubt the court had jurisdiction and power to make such order.

Without further detail, under this state of facts, the court below held, in sustaining the demurrer, that the plaintiffs were not entitled to the relief sought, because they had failed to do equity by paying or tendering so much of the taxes assessed as are properly chargeable to this property. The ruling of the court was evidently based on the theory that the plaintiffs have shown by their complaint that they are the owners of certain described real property, conceded to be of a certain specified cash value, and liable to taxation for state and county purposes, and, as it is also shown by their complaint, that the county court has levied a tax of nineteen and one half mills on the dollar upon all the taxable property in the county, the amount of taxes properly chargeable to their property is easily ascertained; that, this being so, the plaintiffs had failed to bring themselves within the rule entitling them to the the relief sought, because they have not paid or tendered the amount of such taxes, which, upon their own showing, is justly chargeable against their property.

Mr. High says: "It may be laid down as a general rule that equity will not interfere by injunction with the collection of a tax which is alleged to be illegal or void, merely because of its illegality, hardship or irregularity, but there must be some special circumstances attending the threatened injury to distinguish it from a mere trespass, and thus to bring the case within some recognized head of equity jurisprudence; otherwise the person aggrieved will be left to his remedy at law": 1 High on Injunctions, § 485. And again: "Nor will equity interfere by injunction with the enforcement or collection of taxes because of irregularities, illegalities or errors in the assessment of the tax, or in the proceedings incident to its collection, or in the execution of the power conferred upon taxing officers, but in all such cases the taxpayer seeking relief will be left to pursue his remedy at law. And where it does not appear that the established principle of taxa-

tion has been violated, or that actual and substantial injustice will result from the operation of the tax, or that it was for an unauthorized purpose, equity will not restrain the execution of a deed of land sold for taxes on the ground that the proceedings were irregular, or even void in some particulars": *Idem*, § 486. In *National Bank* v. *Kimball*, 103 U. S. 732, Mr. Justice MILLER said: "We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; and that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few dollars more than it ought to be. But that before he asks this exact and scrupulous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder": *State Railroad Tax Cases*, 92 U. S. 575; *Huntington* v. *Palmer, Tax Collector*, 7 Saw. 355 (8 Fed. 449). In stating the rule pertaining to the interference of equity with tax proceedings, CATON, C. J. said: "They are confined almost, if not entirely, to cases where the tax itself is not authorized by law, or, if the tax itself is authorized, it is assessed upon property not subject to the tax": *C. B. & Q. R. R.* v. *Frary*, 22 Ill. 34. In *Mining Co.* v. *Auditor-General*, 37 Mich. 391, the court says: "Equity will not interfere to restrain the collection of the public revenue for mere irregularities. Either it should appear that the property

is exempt from taxation, or that the levy is without legal power, or that the persons imposing it were unauthorized, or that they have proceeded fraudulently."' Other authorities might be cited to the same effect, but these are sufficient to illustrate the principle of non-interference in tax proceedings established by courts of equity.

Upon the other hand, it must be admitted, there are authorities of great weight and respectability opposed to the doctrine announced in such cases. They are cited and referred to by Mr. High, who says, "the decisions are neither few in number, nor wanting in respectability, which have inclined to a departure from the doctrine of non-interference in equity with the collection of taxes; and it will be found, as we proceed, that the courts have in many instances extended preventive relief by injunction against the exercise of the taxing power in cases where such relief was unwarranted, either upon principle or upon the clear weight of authority": 1 High on Injunctions, § 484; Cooley on Taxation, 536, *et seq.* In view of the authorities, the considerations which influenced a court of equity to restrain the collection of a tax are confined to cases where the tax itself is not authorized, or, if it is, that such tax is assessed upon property not subject to taxation, or that the persons imposing it were without authority in the premises, or that they have proceeded fraudulently. Nor is this all. The plaintiff must, in addition to illegality, hardship, and irregularity, bring his case within some of the recognized foundations of equity jurisprudence and observe the maxim that "He who seeks equity at the hands of a court must first do equity" by paying or tendering the amount of taxes properly chargeable against his property. The rule is founded upon the principle that public policy requires that the revenues should be promptly collected by the agencies established by law for that purpose, and that equity should not interfere with tax proceedings because they are faulty or

illegal, when no wrong results to the taxpayer by requiring him to pay what is conceded to be due. In such case a court of equity will not enjoin, as Mr. Justice MILLER said, "the collection of the whole tax when it is obvious that in justice a large part of it should be paid, and, if not paid that the complainants escape taxation altogether."

Applying these principles to the case at bar, we find that the plaintiffs have alleged and specified in their complaint the true cash value of their property liable to taxation, thus showing the excess in its valuation which they would have asked the board to remit, and disclosing on the face of their complaint the amount of taxes chargeable to their property which they concede is liable for. In view of these admissions, and the duty incumbent on the owners of property liable to taxation to contribute their lawful share of the public expenses, we cannot see why plaintiffs should not pay so much of the taxes assessed as are admitted to be due, and can plainly be seen they ought to pay. Is it just or equitable that they should pay nothing because their assessment is too high when they concede an amount for which their property is liable? If the board had sat and an opportunity had been afforded them to appear and secure the remission of the excess, they would have been bound to pay the amounts chargeable against their property as corrected. Why, then, should they not pay so much of the taxes assessed as they concede liability for before they ask the aid of a court of equity to be relieved of the excess? The court thinks that, notwithstanding the irregularities in the proceedings, and the failure of the board of equalization to hold its session at the time prescribed by law, by reason whereof the plaintiffs were deprived of an opportunity to be heard and secure the remission of the excess in the valuation of their property, which constitutes their grievance, they ought, nevertheless, to pay what is conceded to be due before the injunction should be granted.

The decree is therefore AFFIRMED.