Argued March 11, decided April 12, 1910.

## PORTLAND FISH CO. *v.* BENSON.

[108 Pac. 122.]

Fish—Stocking Streams—Closing Streams—Statutes.

1. Section 4106, B. & C. Comp., providing that the board of fish commissioners may stock the various streams of the State with salmon and other fish, and, for purpose of protecting the same, may close the

streams for an indefinite period, to be determined by them, must be construed in reference to the habits of the fish, relative to which the board acts.

FISH—SALMON—CLOSED SEASON—PROPAGATION—STATUTES.

2. Under Section 4106, B. & C. Comp., providing that the board of fish commissioners may stock the streams of the State with salmon, and, to protect the same, close the streams indefinitely, the board stocked a stream with salmon, and closed the stream from March 1st to May 1st. Section 4074, B. & C. Comp., as amended by Laws 1903, p. 233, § 7, makes it unlawful to take salmon under 12 inches in length, and its provision for fishing appliances makes it impossible to catch the young fry. By another statute, the stream was closed from March 15th to April 15th of each year. When salmon are about one year old they migrate to the sea, and when four years old they return to the spawning beds and both male and female die after spawning once. The spawning season begins in July and the migratory movement begins as early as February and continues until October. *Held,* that Section 4106, when construed with the habits of the salmon was intended to protect the fish prior to the spawning season, and had no reference to young fry, which were provided for by Section 4074, and hence the closed season was reasonable and valid.

FISH—STOCKING FISH—CLOSED SEASON—NOTICE.

3. Under Section 4106, B. & C. Comp., providing that the board of fish commissioners may stock the various streams of the State with salmon, and, to protect the same, may close the streams indefinitely, and shall publish notice of the closing, and making it unlawful to fish in such stream after such notice until a like notice is published that the stream is open, where the board in closing the stream specifically limits the closed season no opening notice is necessary.

FISH—CLOSED SEASON FOR PURPOSE OF PROPAGATION.

4. The board of fish commissioners have the right to order certain streams closed, where it is shown that by the habits of the salmon fish, it is imperative that they be allowed to proceed, unmolested, up the stream for the purpose of spawning.

CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—ORDER OF FISH COMMISSIONERS.

5. An order of the board of fish commissioners acting under Section 4106, B. & C. Comp., closing a portion of a stream which they had stocked with salmon, does not deny the equal protection of the law to fishermen in that portion of the stream because other fishermen in other parts of the stream were not affected, since the order affected all similarly situated.

CUSTOMS AND USAGES—CONTROL OF STATUTE.

6. Where a custom contravenes the express provisions of a statute, the statute will prevail.

FISH—RIGHTS OF STATE—REGULATION.

7. The title to the bed of all navigable rivers being in the State, the title to fish, before they are captured, is in the State in its sovereign capacity, in trust for all its citizens; and the right to fish is subject to such laws as the legislature may enact tending to protect them from extinction by exhaustive methods of capture.

INJUNCTION—CRIMINAL PROSECUTIONS.

8. Generally, equity will not enjoin criminal prosecutions, even under a void law, where the defendant may have a full and adequate remedy at law, but, where the enforcement of the void law would deprive a party of property rights, its enforcement may be enjoined.

INJUNCTION—REMEDY AT LAW—VOID ORDER OF FISH COMMISSIONERS.

9. Where a statute empowering a board of fish commissioners to close a stream after having stocked it is valid, that an order made in pursuance of the statute closing a stream against fishing on penalty of criminal prosecution is irregular in the matter of notice, etc., will not give equity jurisdiction to enjoin the enforcement of the order, since there is an adequate remedy at law.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by the Portland Fish Company, a corporation, H. W. Trembath, G. W. Pursifull, Isaac Pursifull, Harry Aune, Alvin Richardson, Chas. F. Ely, Anton Naterlin, Elic Douthit, James Baxter, Wilbur Strauzer, Henry Schuler, George A. Brown, Ed. Howell, John Hosey, Wm. Dutcher, Ed. E. Magoon, F. Fredericks, Otto Larson, G. Rozentrader, John Naterlin, G. B. Wilson, Nelson Olson, Joseph Medley, Nicholas Storey, James Hosey, William Hosey, M. Dhooge, John Erickson, R. C. Worthington, Isaac Austin, John Abrahams, W. O. Smith, Peter Stanich, John Stanich, and John A. Nelson, to enjoin F. W. Benson, as Governor of the State of Oregon; F. W. Benson, as Secretary of the State of Oregon; F. W. Benson, as member of the Oregon State Board of Fish Commissioners; Geo. A. Steel, as State Treasurer; Geo. A. Steel, as a member of the Oregon State Board of Fish Commissioners, and H. C. McAllister, Master Fish Warden, of the State of Oregon, from enforcing an order made by the Board of Fish Commissioners closing to fishing the lower Willamette and the Clackamas Rivers from March 1 to May 1 of 1910.

The complaint alleges that in the month of January, 1910, the board issued the following order and notice:

"Know all men by these presents: That, whereas, the Board of Fish Commissioners of the State of Oregon and

the United States Bureau of Fisheries have propagated and stocked and are propagating and stocking the waters of the Willamette and Clackamas Rivers and their tributaries, in the State of Oregon, with salmon fish; and whereas, said streams are frequented by salmon fish, and, for the purpose of protecting the same, the said Board of Fish Commissioners has decided to close the said Willamette River and its tributaries below and north of the falls thereof at Oregon City, and all of the Clackamas River and its tributaries, to prevent fishing therein, in any manner whatever, for salmon fish, during the period of time herein specified. Now, therefore, notice is hereby given by said Board of Fish Commissioners that said Willamette River and its tributaries, below and north of the falls thereof at Oregon City, and all of said Clackamas River and its tributaries, are, and each of them is, hereby closed to fishing, in any manner whatsoever, for salmon fishing, between twelve o'clock noon on the first day of March, 1910, and twelve o'clock noon on the first day of May, 1910; and it is and will be unlawful to fish for or take or catch any salmon fish in any of said waters during said period of the time above specified. Any and all persons whomsoever so fishing in violation of this notice will be prosecuted as by law provided."

That plaintiffs are engaged in the business of catching fish in such streams for market; that the streams are closed by statute from March 15th to April 15th of each year, but during the remainder of the time included in the order they have had and exercised the right to fish in the streams, and that by immemorial custom such right is a vested right. The order was made under the authority of Section 4106, B. & C. Comp., and, so far as important here, reads:

"The Board of Fish Commissioners is authorized by this act to propagate and stock the various waters and streams of this State with salmon (and other fishes) * * and for the purpose of protecting the same they are hereby authorized to close any stream * * frequented by salmon, or any stream which they have stocked * * (for that purpose) they shall cause notice thereof to be filed in the office of the county clerk in each

county in which such stream * * lies, and shall publish such notice in some public newspaper * * for four successive weeks. * * and shall cause like notices to be published for such time in three conspicuous places on the banks of such stream; * * and it shall be unlawful at any time after the expiration of the date specified in said notice for any person to fish * * until notice shall be filed and likewise published * * of the opening of such stream * * for fishing."

The proceedings of the board in issuing the notice and in the service thereof are alleged to be irregular, without authority, and void, for the reason, among others, that the order was not authorized by the board at a regular or an adjourned meeting, or at a meeting specially called for that purpose; that the closing of the streams is unnecessary for the protection and guard of the propagation of salmon; that the notice was not served as required by law; that it infringes upon a vested right of plaintiffs and a custom of long standing.

Defendants demurred to the complaint for the reason that it does not state facts sufficient to constitute a cause of suit, and that the court has no jurisdiction of the subject-matter of the suit. The demurrer was sustained, and decree rendered thereon dismissing the complaint. Plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Mr. Isham N. Smith, Mr. John F. Logan* and *Mr. George C. Brownell,* with an oral argument by *Mr. Smith.*

For respondents there was a brief and an oral argument by *Mr. Andrew M. Crawford,* Attorney General.

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Salmon fishing is a very extensive industry in Oregon, and the legislature has for many years sought to protect that industry by the enactment of various laws, among which is Section 4106, B. & C. Comp., above quoted, to the end that the supply of salmon shall not

become exhausted, and it must be assumed, that in enacting these laws, the legislature had in mind the conditions and habits of the various species of salmon, so far as known, and some of these conditions and habits will aid us in construing Section 4106, B. & C. Comp., which is the authority for the board's action complained of here. It is asserted by those who have made a special study of salmon and their habits that the young fry do not remain in fresh water, but soon after they are yet quite small they migrate to the sea. At probably four years of age they return to the streams for spawning, usually to the one in which they were originally spawned. The movement of the salmon up the stream toward the spawning beds is prompted by the breeding instinct, and begins as early as February and may continue as late as October. And it is established that soon after spawning both males and females die, each individual spawning only once. The spawning season begins usually in July, continuing as late as October, varying according to the species, and the locality of the stream. See Manual of Fish Culture, by Geo. M. Bowers, United States Fish Commissioner; and American Food and Game Fishes, by D. S. Jordan and Barton W. Everman.

2. The question arises; does the statute authorize the board to close the stream against fishing during a period prior to the spawning season? Plaintiffs contend that it only authorizes the closing for the protection of the young fish, but such protection is already provided by Section 4074 as amended (Laws 1903, p. 233), which makes it unlawful to take or fish for salmon under twelve inches in length, and also the provisions as to fishing appliances make it impossible to catch the young fry while they are in the streams. Neither is protection needed for the spawning fish thereafter, as they are of no value. But the closed season contemplated by Section 4106 may be for an indefinite period which may include the whole year,

as neither the season nor the length of the closed period are mentioned, but it may be closed indefinitely, as appears from the last clause of the section, which provides for a notice when the board shall declare the stream open to fishing.

3. The statute refers to other fishes as well as salmon, the habits of which are very different from salmon, and the statute must be applied to each according to its habits. The protection of the statute may include, and must have been intended to protect, the run of the fish to the spawning beds which as to salmon is the greater need, and the notice closes the stream for two months during which the fish need protection for the purpose of propagation. And as in this case the closed period is specifically limited no special order or notice of the opening of the stream is necessary.

4. Plaintiffs contend that the period during which the board has ordered the streams closed is unreasonable, in that the time necessary to protect and guard the propagation and growth of salmon in such streams does not include the time from March 1st to 15th and April 15th to May 1st. This objection is based on the theory that the purpose of this statute is to protect the young fry, but we have concluded otherwise, as they need no additional protection during the first year of their existence as we have already seen. The history of the habits of the fish shows that for their propagation it is imperative that they shall be permitted to proceed up the streams during the earlier months of the year and this is within the protection, as to salmon, contemplated by the legislature and intended by the board.

5. Again, it is urged by plaintiffs that the order of the board denies equal protection of the law to plaintiffs in that the notice has the effect to close portions of the stream leaving other portions of it open, but this affects the locality and not the individual; where the stream is

open, it is open to everybody, and there is no discrimination or spoliation of property. A law that operates only in a limited territory to accomplish a specific purpose does not deny equal protection of the laws, as it affects all persons equally and impartially who are similarly situated. 6 Am. & Eng. Enc. Law (2 ed.) 80. To constitute a law a violation of the fourteenth amendment of the Constitution of the United States, it must be such as discriminates against the individual or a class of persons, and does not apply to all persons similarly situated. 6 Am. & Eng. Enc. Law (2ed.) 78.

6. Nor can a custom to fish in those streams aid plaintiffs, for when a custom contravenes the express provisions of a statute, the statute will prevail. 12 Cyc. 1054.

7. The title to the bed of all navigable rivers being in the State, the right to fish therein is subject to its control and supervision: *Hume* v. *Rogue River Packing Co.*, 51 Or. 257 (83 Pac. 391: 92 Pac. 1065: 96 Pac. 865). The title to the fish, before they are captured, is in the state in its sovereign capacity, in trust for all its citizens, and the right to fish is subject to such laws as the legislature may enact tending to protect them from extinction by exhaustive methods of capture. This question is settled by the opinion of Mr. Justice MOORE in *State* v. *Hume*, 52 Or. 1 (95 Pac. 808), in which he says:

"It is a generally recognized principle that migratory fish in the navigable waters of a state, like game within its borders, are classed as animals *ferae naturae,* the title to which, so far as that claim is capable of being asserted before possession is obtained, is held by the State in its sovereign capacity in trust for all its citizens; and, as an incident of the assumed ownership, the legislative assembly may enact such laws as tend to protect the species from injury by human means and from extinction by exhaustive methods of capture."

See, also, *In re Deininger* (C. C.) 108 Fed. 623.

8. The defendants contend that plaintiffs have a complete remedy at law, and therefore equity will not entertain a suit to enjoin the enforcement of the order of the board, while plaintiffs insist that equity will entertain jurisdiction where property rights will be destroyed and criminal proceedings instituted under a void law, and and that the facts in this case are within that rule. It is a general rule that equity will not enjoin criminal prosecutions, even under a void law, when the defendant may have a full and adequate remedy at law: High, Injunc., § 1244; Spelling, Extra. Rel., § 24; *Thompson* v. *Tucker,* 15 Okl. 486 (83 Pac. 413). See note to this case in 6 Am. & Eng. Ann. Cas. 1012. But the enforcement of a void law or a proceeding *ultra vires,* whether it is attempted to be enforced by criminal prosecution or otherwise, which, if enforced, would deprive a party of a property right, may be enjoined. This distinction is well stated in High, Injunc, at Section 68:

"So equity will not interfere by injunction to restrain municipal officers from the prosecution of suits for the violation of city ordinances, such proceedings being of a *quasi* criminal nature, since equity will not interfere with the execution of the criminal law, whether pertaining to the state at large or to municipalities. * * If, however, the act concerning which an arrest or criminal prosecution is threatened affects civil property and its enjoyment, in protecting the property right, equity may properly enjoin the criminal prosecution. But in such case its interference is founded solely upon the ground of injury to property and the necessity of preserving property rights."

See, also, *L'Hote* v. *City of New Orleans,* 51 La. Ann. 93 (24 South. 608: 44 L. R. A. 90). To the same effect is *New Orleans Baseball Co.* v. *New Orleans,* 118 La. 228 (42 South. 784: 8 L. R. A. (N. S.) 1014: 118 Am. St. Rep. 366), reported in 10 Am. & Eng. Ann. Cases, in the note to which, at page 760, it is stated: "The reported case lays down the well-stated rule that when penal

ordinances injuriously affect existing property rights, their legality or constitutionality may be inquired into by a court of equity, and their execution enjoined in a proper case"—where many cases are cited. It is said in *Bryan* v. *Birmingham*, 154 Ala. 447 (45 South. 922) :

"The jurisdiction of equity is purely and exclusively civil, and such courts are without power to enjoin or restrain threatened crimes or threatened prosecutions and this rule applies to prosecutions under municipal ordinances as well as state laws."

To the same effect is High, Injunc., § 1326; and Mr. Justice MOORE makes the same distinction in *Sandys* v. *Williams*, 46 Or. 327 (80 Pac. 642), and in *Hall* v. *Dunn*, 52 Or. 480 (97 Pac. 811). It is stated in Spelling, Extra. Rel. § 611, that it is well settled that injunction will not issue to prevent officers from doing acts authorized by valid laws. High, Injunc. § 1309.

9. In the case before us the statute is valid, and the order of the board was made in conformity with the power conferred, and therefore was not an infringement of a civil right of plaintiffs. They have no right to fish for salmon during the period during which fishing is forbidden by the order and notice, and whether they are criminally liable for a violation of the order, by reason of the insufficiency of the service of the notice, equity will not entertain jurisdiction to determine, the remedy being complete at law. This same principle is recognized in tax-sale cases. It is only when the tax is void for jurisdictional defects that equity will interfere: *Welch* v. *Clatsop Co.*, 24 Or. 452 (33 Pac. 934). It is said in *Albany & Boston Mining Co.* v. *Auditor General*, 37 Mich. 391 : "Equity will not interfere to restrain the collection of the public revenue for mere irregularities."

Our attention is called to the case of *in re Fish Seizure*, 5 Ohio Dec. 553. The questions involved in that case only relate to the confiscation of property for violation of the

statute, and has no bearing upon the validity of the statute involved here, providing for the protection of the fish or the authority of the board to make the order complained of.

Therefore the complaint is insufficient to give the court jurisdiction, and the decree of the lower court is affirmed.

AFFIRMED.