Argued January 6; reversed June 23; rehearing denied
October 6, 1931

ENTERPRISE IRRIGATION DISTRICT *v.*
ENTERPRISE LAND & INVESTMENT CO.

(300 P. 507)

*E. B. Tongue,* of Hillsboro (H. C. Merryman, of Klamath Falls, on the brief), for appellant.

*J. H. Carnahan* and *C. F. Stone,* both of Klamath Falls, for respondent.

RAND, J. This is a suit in equity to foreclose certain delinquent district tax certificates for assessments levied by the plaintiff district upon lands of defendant, upon which all other taxes and assessments have been paid. Plaintiff, Enterprise Irrigation District, a public corporation, was duly organized under the laws of this state for the purpose of procuring and supplying water for the irrigation of irrigable lands within the district in private ownership. It obtains the water for that purpose under a contract with the United States of America from the main canal of the Klamath reclamation project, a government project in Klamath county, Oregon.

A statute of this state provides that: "* * * The board [of an irrigation district] shall have the power and it shall be their duty to manage and conduct the business and affairs of the district, make and execute all necessary contracts, employ and appoint such agents, officers and employes as may be required, and to prescribe their duties; establish equitable by-laws, rules and regulations for the distribution and

use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purposes of this act; provided, that any water, the right to use of which is acquired by the district under any contract with the United States, shall be distributed and apportioned by the district in accordance with the acts of congress, and rules and regulations of the secretary of the interior, and the provisions of said contract in relation thereto. * * *'': Section 48-201, Oregon Code 1930.

The contract under which the plaintiff district procures its water for distribution to the individual users thereof from the main canal of the Klamath reclamation project recites that the contract was made and entered into "this 5th day of October, 1920, in pursuance of the Act of Congress of June 17, 1902 (32 Stat., 388), known as the Reclamation Act, and acts amendatory thereof or supplementary thereto, and in particular Section 2 of the Act of Congress approved February 21, 1911 (36 Stat., 925), known as the Warren Act," and it is expressly stipulated in the contract "that water supplied under the terms of this contract shall be used solely for the purpose of distribution by the District to individual water users, and such water shall be supplied only to such areas and used only in the manner prescribed by law for lands in private ownership under the Klamath project, * * *." It also expressly stipulates that "beneficial use shall be the basis and limit of all right acquired by the District hereunder and that the water herein specified to be delivered shall be supplied solely to the District lands within the limits of the District as now organized * * *." This contract was entered into by John Barton Payne, Secretary of the Interior, on behalf of

the United States and by the president and secretary of the plaintiff district under authority of its board of directors.

The Act of Congress of June 17, 1902, known as the Reclamation Act and referred to in the contract, provides that "no right to the use of water for land in private ownership shall be sold for a tract exceeding one hundred and sixty acres to any one landowner," and section 2 of the Warren Act, to which particular reference was made in the contract, contains the following express proviso: "Provided further, That water shall not be furnished from any such reservoir or delivered through any such canal or ditch to any one landowner in excess of an amount sufficient to irrigate one hundred and sixty acres."

The act of August 9, 1912 (37 Stat., 265), reads as follows:

"* * * Provided, That no person shall at any one time or in any manner, except as hereinafter otherwise provided, acquire, own, or hold irrigable land for which entry or water right application shall have been made under the said reclamation act of June seventeenth, nineteen hundred and two, and acts supplementary thereto and amendatory thereof, before final payment in full of all instalments of building and betterment charges shall have been made on account of such land in excess of one farm unit as fixed by the Secretary of the Interior as the limit of area per entry of public land or per single ownership of private land for which a water right may be purchased respectively, nor in any case in excess of one hundred and sixty acres, nor shall water be furnished under said acts nor a water right sold or recognized for such excess; but any such excess land acquired at any time in good faith by descent, by will, or by foreclosure of any lien may be held for two years and no longer after its acquisition; and every excess holding prohibited as aforesaid shall

be forfeited to the United States by proceedings instituted by the Attorney-General for that purpose in any court of competent jurisdiction; and this proviso shall be recited in every patent and water right certificate issued by the United States under the provisions of this act."

Defendant owns within the plaintiff district approximately 365 acres of land and outside of the district and under the Klamath project 159.9 acres of land, for the irrigation of which latter tract it has a water right not yet fully paid for. A part of the stipulated payments therefor are not yet due or payable. Of the lands within the district and belonging to the defendant, the district has assessed defendant for the irrigation thereof for not less than 260.41 acres in any one year and during other years for quantities in excess thereof, for one of which it assessed defendant for 353.52 acres. Said assessments were made for the years commencing with 1920 and ending with the year 1927. None of said assessments have been paid and this suit was brought to foreclose certificates of delinquency which were issued by the sheriff to plaintiff therefor.

As stated, this is not a statutory proceeding for the foreclosure of these certificates but is a suit in equity. There were two complaints filed, an original and a supplemental complaint; to the first complaint defendant answered admitting its ownership of the lands assessed by the district and its nonpayment of the assessments levied by the district against the lands, and denying generally all other allegations of the complaint. As an affirmative defense defendant alleged all the foregoing facts and alleged that, by reason thereof, the attempted assessments levied by the district were invalid and void and constituted a

cloud upon its title, and prayed to have its title quieted therefrom and the cloud removed. It also alleged that, by reason of defendants ownership of the 159.9-acre tract under the Klamath project and of a water right therefor not fully paid for, it was prohibited from using any water which had been obtained under said contract by the district from the United States for the irrigation of its lands within the district and that the district likewise was prohibited, both by the provisions of the federal statutes and the express provisions of its own contract with the United States, from furnishing water to defendant for the irrigation of lands within the district. This, coupled with the denial by defendant that the district had ever furnished any water to it for the irrigation of its lands or that defendant had ever accepted or used any water for said purpose, would, if true, and these facts are admitted to be true by the demurrer, be a complete defense to plaintiff's right to maintain the suit and entitle defendant to equitable relief. Where a tax is not authorized by law or, if authorized, it is assessed upon property not subject to the tax, or if the persons imposing it were without authority in the premises or have proceeded fraudulently, a court of equity has power to restrain the collection of a tax so imposed. This is the doctrine announced in *Welch v. Clatsop County,* 24 Or. 452 (33 P. 934), and has become the settled law of this state.

It is also alleged as a defense that because of defendant's ownership of the 159.9 acres of land under the Klamath project and its use of the water furnished by the reclamation project for the irrigation thereof under a water right not yet fully paid for, if defendant should accept water from the district and apply it to the irrigation of its lands within the district, said tract of

159.9 acres of land and the water right connected therewith would be subject to forfeiture under the federal acts, and that the defendant had been notified that if it used the water furnished by the district for the irrigation of any lands within the district the government would sue the defendant and seek to obtain such relief.

The answer also alleges that before the contract was entered into between plaintiff district and the United States that defendant had made inquiry of the officers of the reclamation project whether, in view of its holdings under the reclamation project, it would be permitted to purchase water from the plaintiff district for the irrigation of any of its lands within the district and had been informed by such officials that no such use could be made of any water furnished by the district and that defendant had thereupon, and before the entering into of said contract, informed the officers of said district that its lands could not be irrigated by any water furnished by the district for that purpose, notwithstanding which it is alleged that the directors of the district fraudulently attempted to impose a district tax for water claimed to have been furnished and which was not in fact furnished for the irrigation of defendant's lands, with full knowledge that the lands were not taxable for said purpose and that the district had no authority to levy any assessment against defendant upon its said lands.

The answer further alleged that the lands in controversy are located at the extreme lower end of the plaintiff district and that plaintiff's ditch terminates upon said lands and that the district ever since obtaining said contract from the United States has used defendant's lands as a place for dumping all its sur-

plus water and that, by reason thereof, the lands which, before the formation of the district, were valuable farming lands upon which defendant raised a valuable crop of grain have been converted into a swamp and rendered of no value whatever, and that defendant, since said water was permitted to flow down to and upon his said lands, has neither raised nor harvested any crop thereon whatsoever, and its lands have thereby sustained irreparable damage.

The prayer of the answer was that defendant's title to the lands be quieted as against these alleged illegal assessments and that the plaintiff be enjoined and restrained from dumping its water upon defendant's lands, and that defendant recover damages for the wrongful acts complained of.

All these matters were alleged in defendant's third amended answer to the first complaint. Plaintiff moved to strike a part thereof as sham, frivolous and irrelevant and demurred as to the remainder. The motion and demurrer were both sustained by the trial court and, after such ruling had been made, plaintiff filed a supplemental complaint, seeking a foreclosure of other delinquent tax certificates that had been issued by the sheriff subsequent to the filing of the original complaint. To this supplemental complaint defendant answered, setting up the same admissions, denials and new matter as that contained in its former answer. To this new matter the same objections were made and the same rulings had. The cause then proceeded to trial upon the issues made by the allegations of the two complaints and the denials contained in the answer, and defendant was not permitted to introduce any evidence except such as the trial court held to be admissible under a general denial. A decree was

entered in favor of plaintiff, foreclosing the delinquent tax certificates as prayed for in the complaint, and defendant appealed.

■ It is contended upon the part of plaintiff district that the United States was a necessary and indispensable party and, since it was not a party to the suit and without its consent could not be made a party, the matters alleged could not be considered nor the relief prayed for granted and that, therefore, the court's ruling upon the motion and demurrer was proper.

This contention is based upon an assertion not pleaded that, under the contract between the district and the United States, the district is obligated from year to year to pay the United States for the water to be hereafter furnished, and that, if the assessments upon defendant's lands should be held to be invalid, the security of the United States for the enforcement of such future payments by the district would thereby be diminished. In support of this contention the district cites numerous authorities, none of which are in point or sustain the contention. Regardless of whether the certificates sought to be foreclosed or the assessments upon which they are based are valid and enforceable or not, the United States has no interest in them, nor does it have any lien on the lands against which the assessments are claimed. The fact that the United States is a creditor of the district cannot deprive the defendant of its right to defend against an illegal assessment levied by the district. In a suit of that character, the United States is not a necessary or proper party to the suit. Certainly it cannot be contended that the United States, after denying defendant the right to use water upon its lands, can then be heard to say that it has an interest in compelling defendant to pay for the water it deprived it of using. If this contention is true, then a person illegally taxed

upon property within this state could not defend against such illegal tax in a suit where the state was not a party merely because the county in which the tax is sought to be enforced is a debtor of the state. The United States, like every other creditor, may enforce its obligations against the district but it cannot prevent any defendant from asserting any legal defense when sued by the district.

■■ It is a fundamental rule that every person, when sued in a court, shall have the right to defend against the claims of his adversary and that if the necessary parties are not before the court they must be brought in so that the matters in controversy may be adjudicated and determined. If the United States had rights in the matter in controversy which could not be determined without its presence in court, it was the duty of the district, and not of the defendant, to obtain its consent that it be made a party to the suit. If, as now contended, defendant cannot maintain its defense nor protect its rights merely because the United States is not a party to this litigation and cannot be made a party without its consent, then it was the duty of the district to make the United States a party and it cannot now be heard to say that, in the absence of the United States, it can enforce its own claims against the defendant and that the defendant cannot make its defense because the United States is not a party to the suit. Such a contention would shock the conscience of any court. To hold that a plaintiff can successfully maintain a suit and that the defendant shall not be permitted to defend because of the lack of necessary parties before the court is unthinkable. If any one in such case must fail, every principle of equity requires that it should be the plaintiff who fails and not the defendant.

■ The plaintiff also contends that the statute of limitations is a bar to defendant's right to have its title quieted as against these alleged illegal assessments. Upon this question Judge Cooley says: "A bill to set aside a tax or a tax-sale as a cloud upon title may be filed any time after the tax is laid, and mere delay in proceeding against a void tax or special assessments will not of itself constitute laches; but statutory limitations must be observed": 2 Cooley on Taxation (3d Ed.), p. 1453. In the instant case there has been no sale, either lawful or unlawful, of defendant's premises, nor has there been any change of possession. The only proceedings thus far have been the levying of the assessments, the issuance of the delinquent tax certificates, and the bringing of this suit to foreclose the certificates. It is clear that the defendant had the right to set up the illegality of the various steps taken by the district to impose these assessments and to have its title quieted if such assessments are illegal and void, and they are illegal and void if the facts admitted by the demurrer are true, unless defendant is estopped to assert the truth. This leads to the main contention urged by plaintiff, namely: that by reason of acts done on behalf of the corporation by its president at the very inception of the district, the defendant is estopped to assert the defenses set up in the answer.

■ No rule is better settled in this state than that an estoppel to be available to a party must be pleaded if there has been any opportunity to plead the facts upon which the estoppel is based. The plaintiff filed no reply and alleged no facts upon which an estoppel can arise. Plaintiff had an opportunity to plead the facts if it had sought to do so. The question, therefore, is not here for determination.

■ While the defendant did not set up in his answer in a single defense all of the facts constituting his defense but stated such facts separately as if they were in the nature of counterclaims, the facts referred to were all alleged in the answer with great definiteness and much repetition. They were held to be insufficient by the court. In this, the learned trial court was in error. If true, the facts stated constitute a complete defense if there was no estoppel in the case. Upon that question we will make no determination further than to say that the very principle which underlies all special assessments is that the value of the property is enhanced to an amount at least equal to the assessments and that this principle cannot be departed from without taking private property for public use: *Allen v. Drew,* 44 Vt. 175; *White v. People,* 94 Ill. 604; *City of Bloomington v. Chicago, etc., Co.,* 134 Ill. 451 (26 N. E. 366); *City of Allegheny v. Western Pennsylvania R. Co.,* 138 Pa. 375 (21 Atl. 763); *Hanscom v. City of Omaha,* 11 Neb. 37 (7 N. W. 739).

Considerable testimony was taken in the trial of the cause in the court below. If plaintiff desires to proceed further, the testimony taken may be used upon the trial of the cause and such further testimony may be offered as the parties may desire. The decree appealed from will be reversed and the cause will be remanded with directions to overrule the demurrers and the motions to strike, and either party may apply to the court below for leave to amend its pleadings or file additional pleadings should it desire to do so.

Decree reversed and remanded for such further proceedings as are not inconsistent herewith.

Belt and Campbell, JJ., absent.